BESSIE L. KLEPPER, Respondent, *v.* SEYMOUR HOUSE CORPORATION OF OGDENSBURG, INC., and Another, Appellants.

Third Department, November 12, 1926.

Nuisance — negligence — action to recover for injuries suffered when snow and ice on roof of building of corporation defendant fell on plaintiff while she was on sidewalk — city not liable on ground that building encroached on street, since evidence fails to establish any encroachment — evidence merely that width of street was less than that shown on official map does not establish encroachment of particular building — city not liable in negligence in failing to have snow removed — corporation defendant not liable in negligence, since at time of accident property was in possession of tenants — city not liable in negligence in failing to warn pedestrians.

The plaintiff while walking along a sidewalk in the city of Ogdensburg was injured when a mass of snow and ice fell from the cornice of a building owned by the defendant corporation and struck her. She seeks to recover from the city on the ground that the building in question encroached on the street and was, therefore, a nuisance which the city should have abated and also on the ground that the cornice of the building was so constructed as to permit of the accumulation of ice and snow which would, in case of thaw, fall onto persons walking on the sidewalk.

The city is not chargeable on the ground that the building constituted a nuisance in that it encroached upon the street, since the proof most favorable to the plaintiff tends merely to show that at that point the width of the street was less than that specified on a city map. In the absence of any evidence of a boundary monument, it cannot be held that the building in question encroached on the street by reason of the width of the street, for the building on the opposite side of the street may have been the one that encroached on the street. Especially is this true, since it appears that the building in question was standing when the official map was made, and it may well be that the surveyor used the wall of the building in question as a monument.

The defendant city is not liable in negligence for failure to remove the snow and ice or to take measures to prevent its falling upon pedestrians, for the snow and ice was on private property and the city had no right to enter thereon for the purpose of removing the snow and ice or of taking measures to prevent its falling.

The defendant corporation cannot be held liable in negligence, since it appears that at the time of the accident the building was in the possession of tenants and that the building when leased was in good repair, for it was the duty of the tenants in the absence of any agreement to exercise care in respect to removing the snow and ice from the cornice so as to prevent its doing injury to those who used the street.

The city is not liable in negligence in failing to give adequate warning to pedestrians of the danger of using the sidewalk at the point in question, for a city is not responsible in negligence for failure to warn against perils existing without the limits of its streets.

APPEAL by the defendants, Seymour House Corporation of Ogdensburg, Inc., and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of St. Lawrence on the 31st day of December, 1925, upon the verdict of a jury for $37,500, and also from an order entered in said clerk's office on the 30th day of December, 1925, denying defendants' motion for a new trial made upon the minutes.

*Frank J. Ryan* [*Purcell, Cullen & Pitcher* of counsel], for the appellant Seymour House Corporation.

*Robert S. Waterman,* for the appellant City of Ogdensburg.

*Edmund Fitzgerald* [*Delos M. Cosgrove* of counsel], for the respondent.

H. T. KELLOGG, J. The plaintiff, while walking northerly on the easterly sidewalk of State street in the city of Ogdensburg, was struck on the head by a mass of snow and ice which fell from the cornice of a four-story building, owned by the defendant, the Seymour House Corporation. This action was thereupon brought against the Seymour House Corporation and the city of Ogdensburg to recover damages for the injuries sustained. On the first trial of her action the plaintiff claimed that the building from which the snow and ice fell encroached upon State street, and was, therefore, a nuisance. She also claimed that the cornice

of the building, even though the building were upon private land, constituted a nuisance. This claim was based upon the proposition that the cornice was so designed that snow was liable to accumulate upon it, and be converted into ice by alternate thaws and frosts, with the result that the mass, when loosened by a thaw, might slide from its sloping shelf and be projected into the street upon persons walking on the easterly sidewalk. The plaintiff also claimed that the two defendants were negligent in failing to remove the mass of snow and ice, or in taking measures to prevent its fall to the street. The case, however, went to the jury solely upon the question whether or not the defendants or either of them were liable in nuisance. The jury reported a verdict in favor of the plaintiff against both defendants for the sum of $50,000. This court heard an appeal from the judgment on the verdict, reversed the judgment and directed a new trial. (212 App. Div. 277.) We held that there was no proof that the building encroached upon State street. We also held that the Seymour House Corporation was not liable in nuisance, because of the form of the cornice, since it had not erected the building or cornice, but was a recent purchaser thereof and notice had not been brought home to it that the cornice constituted a nuisance. We also held that the city was not liable because of the plan of the cornice. We drew a distinction between the power and duty of the defendant city in relation to the summary removal or destruction of a building in or encroaching upon a public street and its power and duty summarily to abate a nuisance created by a building wholly upon private land. We held that in the former instance it had the power and duty summarily to abate. We held that in the latter instance its only power was to resort to legal process for the abatement of the nuisance and that for a failure so to resort a city could not be held responsible by an individual who suffered because of the nuisance. We cited authority to this effect, which we then deemed and now deem to have been controlling. The case has now been retried. Further proof as to encroachment was introduced upon the new trial. The trial court, following our decision, held the Seymour House Corporation not liable in nuisance. It instructed the jury that the defendant city might be held liable in nuisance because of proof then in the case that the building encroached upon State street. It further instructed the jury that both defendants might be held liable in negligence for failing to remove the snow or failing to take some action to prevent its falling upon pedestrians. The jury reported a verdict in favor of the plaintiff against both defendants which, as now entered, awards to the plaintiff the sum of $37,500 as damages. From the judgment entered upon the verdict each defendant has appealed. Two questions remain in the case for

determination upon this appeal. They are: Question 1. Was the Seymour House building, at the site of the accident, an encroachment upon State street for failure to remove which the city of Ogdensburg might be held liable in nuisance? Question 2. Could the jury properly find that the defendants or either of them were guilty of negligence which caused the injury to the plaintiff?

Question 1. The Seymour House building faces Ford street on the north and State street on the west. The former street, running east and west, intersects the latter street, running north and south, at right angles. The building consists of two parts. The hotel, known as the Seymour House, is a three-story building at the apparent street intersection. The wing is a four-story building adjoining the hotel on the south and facing, apparently, on State street. The lower story of the wing is occupied for stores or offices by several tenants. The upper three stories are used as bedrooms for the Seymour House hotel. The westerly walls of the wing project from the westerly walls of the hotel several feet. It is claimed by the plaintiff that the walls of the wing project into State street two and three-tenths feet.

In order to establish the encroachment the plaintiff introduced in evidence a map of the city and called as a witness a civil engineer named Field. The city map was authorized to be made by the common council of the city by a resolution passed in November, 1868. It was adopted as the official map of the city by the common council in April, 1869. It bears the signature of the mayor and clerk of the city who held such offices in the year 1869. It was made by one Thomas Tate. No deeds granting to the city the land now constituting State street, Ford street, or any street in the city, have been put in evidence. No resolution of the common council or other municipal body acting for the city of Ogdensburg, or its municipal predecessor, accepting lands granted and dedicating them for street uses, has been proven. No order laying out State street, Ford street, or any other street, has been put in evidence. Nor are we informed whether Thomas Tate in mapping the streets of the city had recourse to resolutions or orders of that character, or to grants of land dedicating them to street purposes. Nor do we know whether Tate in making the map made use of such data and plotted the city streets thereupon according to lines as they might thus have been legally established, or whether in plotting them he made use of no other data than street occupations and occupations of abutting properties as they appeared to him in the years 1868 and 1869. The map, therefore, can hardly be said to exhibit street locations and boundaries as legally established. However, for the purposes of this litigation, the map, since it was

44

adopted by the common council as the official map of the city, in so far as it contains admissions against the interest of the city, may be regarded as evidence having probative value.

The city map exhibits no boundary monuments which have been located upon the surface of the ground by any witness in the case. No line of any street shown upon the map has been tied to any known physical object or is capable of being so tied. We learn from it that the correct width of State street is eighty feet; that the correct width of Caroline street, a parallel street next east to State street, is sixty feet; that the correct width of Franklin street, next east to Caroline street, is sixty feet; that the correct width of Isabella street, a parallel street next west to State, is sixty feet. We learn from the witness Field that business blocks, churches and other buildings occupy the blocks from Isabella to Franklin streets, and the block to the west of Isabella, as well as the block to the east of Franklin street; that Caroline street, as now in use, is but fifty-nine and five-tenths feet wide, Franklin street but fifty-six and fifteen one-hundredths feet wide, Isabella street but fifty-eight and two-tenths feet wide and State street but seventy-seven and seven-tenths feet wide. Field, basing his testimony upon the map and ancient deeds describing properties of abutters upon Ford and State streets, states that the blocks between Isabella street and State street, between State and Caroline, and between Caroline and Franklin, are occupied by buildings for a width greater than the width sanctioned by the city map and the descriptions in the deeds, to the extent, in the case of the first, of eight-tenths of a foot, in the second of more than three feet, in the third of three and eighty-five one-hundredths feet. From the map and the observations of the witness Field, therefore, we might be able to say that the streets named are too narrow and the blocks too wide to comply with the map and the descriptions in the ancient deeds referred to. We cannot say, however, in the case of any street that the encroachment has been from the east side or from the west side. This necessarily follows from the lack of any discoverable monument to locate the west or east line of any street. The map may show the correct relation between one street and another street. However, neither it nor any of the proof shows the correct relation between any street line and the surface of the ground. Thus, while the map may present an ideal picture of an Utopian Ogdensburg, it certainly fails as a practical guide to street locations in an existing city which has material substance. The witness Field, with his map, his old descriptions and his observations, would have us reconstruct, if not the entire city of Ogdensburg, at least all that part which lies between Isabella street and Franklin street. He tells us that in the blocks between these streets sub-

stantially every occupant has built over on his neighbor's land or upon the city streets. Among many other encroaching buildings he cites the Presbyterian church, the walls of which encroach upon Franklin street, according to Field, for a distance of three and eighty-five one-hundredths feet, and the Waterman building which encroaches upon Caroline street for a distance of one-half foot. If we gave sanction to the Field theory, our decision, to be carried to its logical conclusion, would require the razing of nearly all the buildings in the most important business section of the city of Ogdensburg. We cannot lend our approval to the theory advanced. In the absence of any physical monument by which a street line may be located, in the absence of any resolution dedicating or order laying out a street, in the absence of any descriptions fixing the legal boundaries of any street, we consider that the street lines of the city of Ogdensburg must be regarded as coinciding with the building lines of structures erected upon its borders as the same have long since been practically located. It is worthy of note that the Seymour House building, including the wing, was standing upon the very site which it now occupies when Thomas Tate, in the years 1868 and 1869, made the city map relied upon by the witness Field. It is also worthy of note that while the walls of the Seymour House wing are less than eighty feet distant from the walls of the Judson building, one of the buildings on the west side of State street opposite the Seymour House, it is precisely eighty feet distant from the walls of the Stillwell building which are also opposite. Eighty feet, according to the city map, is the correct width of State street. It may well be, therefore, that Tate, in constructing his map, chose the west wall of the Seymour House wing as a monument correctly determining the east boundary line of State street. However this may be, we can find no proof in the case to indicate that the Seymour House wing encroaches upon State street, rather than that the west walls of the Judson building opposite encroach thereupon. We find, therefore, that the walls of the building, as erected, did not, according to the proof given, constitute an obstruction to travel in State street, and consequently a nuisance.

Question 2. We think the defendant city was not liable in negligence for failure to remove the snow and ice or to take measures to prevent its fall upon pedestrians. We have heretofore held that the city was not liable in nuisance because it had not the power to go upon the premises of the Seymour House Corporation and remove or reconstruct the cornice which, it is asserted, was of such a design that it constituted a menace to travelers upon State street. It is equally true that the city could not, without committing a trespass, go upon the roof of the Seymour House wing

to remove snow from the cornice or to take measures to prevent its fall. We think the defendant Seymour House Corporation, equally with the city, was innocent of negligence. It had leased all the property in question which was, at the time of the accident, in the actual occupancy of tenants. " As between him who is the landlord and owner, and him who is the lessee and occupant of premises, there is, in general, no obligation upon the former to keep them in repair, when he has made no express contract to that effect." (*Clancy* v. *Byrne*, 56 N. Y. 129, 133.) The premises in question were in good repair when the Seymour House Corporation leased them. That company never agreed to keep them in repair or undertook to remove snow from the cornice of the wing when the same had accumulated thereupon to a dangerous extent. It was for the tenant, not the landlord, to exercise care in respect to snow removal or the prevention of a snow or ice fall from a cornice. We think, therefore, that the defendant Seymour House Corporation was not liable in negligence for failure to remove the snow and ice or to take measures to prevent its fall upon pedestrians.

The respondent in her brief, after asserting that the defendant city was negligent in failing to remove or causing to be removed the snow or ice which accumulated on the cornice, further suggests that if the city was not negligent in these respects, it was guilty of negligence in failing to give adequate warning to pedestrians of the danger which impended that snow and ice might fall upon them if they used the sidewalk below the cornice. This point was not made by the respondent before the trial court, nor did the trial court submit this question to the jury. Moreover, all the cases cited by the respondent upon this point relate to perils arising from obstructions within the limits of city streets. We are referred to no case wherein it has been held that it is the duty of a city to warn pedestrians of a peril to a street user which proceeds from structures upon private land abutting upon the street. We find a case in Massachusetts holding that a city is not in anywise liable for injuries caused pedestrians by the fall of snow and ice from the roof of a building situate on private lands adjoining a highway. The case is *Hixon* v. *City of Lowell* (13 Gray, 59). It is true that the decision was an interpretation of a Massachusetts statute wherein it was provided that all highways must " be kept in repair at the expense of such town " and that " if any person shall receive any injury in his person or property, by reason of any defect or want of repair, which has existed for the space of twenty-four hours, in any highway, town way, causeway or bridge " he may recover compensation. The court held that snow and ice over-hanging from the roof of a private building, although threatening street users, did not constitute a case of " defect or want of

repair " in the highway.  However, we are not aware of any authority to the effect that the common-law duty of a municipality in reference to its streets is greater than the duty imposed by the Massachusetts statutes.  Dillon says:  " These statutes, it will be perceived, are general in their language, and, in substance, impose the duty on towns (and they extend to cities as well) to make *their ways safe and convenient, and give an action for injuries* occasioned to the person or property of travellers by reason of *any defect or want of repair.*  How far the duty they impose is coincident with the corresponding duty which in other States is held by the courts to rest by implication upon municipal corporations proper, so as to make the adjudications in New England *precisely* applicable elsewhere, is a question perhaps not entirely clear.  \* \* \* We venture to remark, however, that it is probable these statutes, as construed, do impose in some respects a greater measure of liability than would elsewhere be held to exist by implication." (Dillon Mun. Corp. [5th ed.] § 1693.)  Dillon further says that a town or city in Massachusetts fulfills its duty " when the travelled way is without obstruction or structural defects which endanger the safety of travellers, and is sufficiently level and smooth, guarded by railings where necessary, to enable persons, by the exercise of ordinary care, to travel with safety and convenience."  (Id. § 1694.) We think, therefore, that the decision in *Hixon* v. *City of Lowell* (*supra*) states a principle of law which should obtain in this State and that the defendant city in this case was not liable for failure to give warning of a street peril which proceeded from a structure not within the limits of the street.

The judgment and order should be reversed and complaint dismissed, with costs.

All concur.

Judgment and order reversed on the law, with costs, and complaint dismissed, with costs.